**NICK L. NIELSON**
**NIELSON LAW OFFICE**
120 North 12th Avenue, Suite 7
P.O. Box 6159
Pocatello, Idaho 83205-6159
Tel:  (208) 232-1735
Fax:  (208) 233-0048

**Attorney for Plaintiff Anne Fry**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANNE FRY,<br><br>             Plaintiff,<br>vs.<br><br>FARMERS INSURANCE, FARMERS INSURANCE EXCHANGE, FARMERS GROUP, INC., FARMERS INSURANCE COMPANY OF IDAHO, and FARMERS INSURANCE GROUP OF COMPANIES DISTRICT OFFICE,<br><br>             Defendant. | Case No. 4:12-CV-00637<br><br>**VERIFIED COMPLAINT**<br>**AND DEMAND FOR JURY TRIAL**<br><br>Fee: $350.00 |

COMES NOW Plaintiff, Anne Fry, (hereinafter referred as "Fry") by and through her attorney, Nick L. Nielson, and for causes of action against FARMERS INSURANCE, FARMERS INSURANCE EXCHANGE, FARMERS GROUP, INC., FARMERS INSURANCE COMPANY OF IDAHO, and FARMERS INSURANCE GROUP OF COMPANIES DISTRICT OFFICE, ("hereinafter referred to as "Farmers")complains and alleges as follows:

## PARTIES

1. At all times relevant hereto, Fry was and is a resident of the City of Pocatello, Bannock County, Idaho.

2. At all times relevant hereto, Defendant Farmers Insurance was and is an Idaho corporation, registered with the Idaho Secretary of State, doing business in the State of Idaho.

3. At all times relevant hereto, Defendant Farmers Insurance Exchange was and is a California corporation doing business in the State of Idaho.

4. At all times relevant hereto, Defendant Farmers Group, Inc. was and is a California corporation doing business in the State of Idaho.

5. At all times relevant hereto, Defendant Farmers Insurance Company of Idaho was and is an Idaho corporation, registered with the Idaho Secretary of State. Farmers Insurance Company of Idaho is also duly registered with the Idaho Secretary of State, File No. C41588. At all times relevant hereto, Defendant Farmer's Insurance Company of Idaho was and is doing business in the State of Idaho.

6. At all times relevant hereto, Defendant Farmers Insurance Group of Companies District Office was and is an Idaho corporation, registered with the Idaho Secretary of State. Farmers Insurance Company of Idaho is also duly registered with the Idaho Secretary of State, File No. D46954. At all times relevant hereto, Defendant Farmers Insurance Group of Companies District Office Idaho was and is doing business in the State of Idaho.

7. At all times relevant hereto, Farmers Insurance was and is doing business as "Farmers Insurance" in the State of Idaho.

## JURISDICTION AND VENUE

8. This is a civil action for damages arising, *inter alia*, under 29 U.S.C. §623 (Prohibition of Age Discrimination), The American with Disabilities Act ("ADA"), 42 U.S.C §12101, *et seq.* and Title VII of the Civil Rights of 1964 as amended by the Equal Employment Opportunity Act of 1972 (42 U.S.C. §§2000e *et seq.*).

9. Subject matter and original jurisdiction of the federal claims and questions raised herein exist by virtue of 28 U.S.C. §1331 and 42 U.S.C. §2000e-5(f)(3).

10. The acts complained of occurred in the District of Idaho and, thus, venue is appropriate in this Court pursuant to 28 U.S.C. §1391(b)(2).

11. Farmers is an employer within the meaning of "employer" found in 29 U.S.C. §630, 42 U.S.C §12111(5) and 42 U.S.C §2000(e)(b).

12. Fry was an employee within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. §§2000e *et seq.*

13. Fry timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) alleging that Farmers Insurance discriminated against her on the basis of her age and disability.

14. On or about October 3, 2012, Plaintiff received a Dismissal and Notice of Rights, dated October 1, 2012, from the EEOC.  The EEOC's Dismissal and Notice of Rights is attached and incorporated by reference as Exhibit 1.

15. Fry files this Complaint within the 90 day period following the receipt of the EEOC's Dismissal and Notice of Rights.

## GENERAL ALLEGATIONS

16. Fry re-alleges and incorporates Paragraphs 1 through 15 of her Complaint as if fully set forth herein.

17. Upon information and belief, at all times alleged herein, Farmers operates over 8000 businesses throughout the U.S., the District of Columbia, and Puerto Rico, including one at 2500 So. 5th Avenue, Pocatello, Idaho.

18. Fry began her employment with Farmers at 2500 So. 5th Avenue, Pocatello, Idaho, in July 1970.

19. Fry became claims administration manager for Farmers in 2004 and held that position until the end of her employment. Prior to the end of her employment, Fry maintained a supervisory role over 52 employees.

20. Fry's primary responsibilities as claims administration manager included coordinating claims administration in her office.

21. As a claims administration manager, Fry worked in the Claims Support and Solutions Department at Farmers. At times relevant, Scott Palmer was the manager of the department and immediate supervisor of Fry. Michelle Dereszynski was the director of the Claims Support and Solutions department and worked out of Farmer's Westlake, California office.

22. Fry received good performance reviews while at Farmers. Fry was supposed to be promoted from salary grade 35 to salary grade 36 in 2008, but the salary promotion never occurred.

23. In early 2008, Fry was diagnosed with brain cancer. She had a biopsy performed on April 22, 2008 and subsequently had surgery which involved resection of an astrocytoma.

24. Following her brain surgery, Fry was diagnosed with Methicillin-resistant Staphylococcus Aureus (MRSA).

25. Fry was off work approximately four months due to the surgery and MRSA.

26. During the time she was off work, she called in to her work and spoke with her group of employees to make sure things were going well. She returned to work on August 25, 2008.

27. Although Fry had no work restrictions when she returned to Farmers, she did suffer from some short term memory loss. Additionally, she was more sensitive to stressful situations and would sometimes experience dizzy spells. All such symptoms were directly related to her physical condition resulting from the brain cancer/surgery/MRSA.

28. In May, 2009, Fry's relationship with Palmer and Dereszynski began to deteriorate. Fry was assisting one of her subordinates with a compliance problem when she inquired of Rob Howard, Vice President of Claims Compliance about another employee named "Steve" and potential information held by Steve. This inquiry was made at 12:33 PM on May 5, 2009. Dereszynski was copied on the email.

29. At 1:10 PM on May 5, 2009, Dereszynski replied to Fry stating only "ANNE, PLEASE STOP THE MADNESS!!!"

30. Upon receiving the email from Dereszynski, Fry was shocked to read such an angry response to a routine non-inflammatory question.

31.   On September 30, 2009, at 8:02 AM, Fry sent a routine email to Palmer in response to an email Palmer had sent her. Fry's email read as follows:

> The compliance issue should be answered by Accounting (Dana Doak or Rick Brown) and Tony Morris (VP Tax Strategy). This document is basically explaining the time status that needs to be follwed with escheated items being sent to the State. This is not part of our department's compliance rules. Our compliance is to escheat the escheatable check. Again, this is not our department's involvement.

32.   On October 1, 2009, at 8:32 AM, Palmer responded to Fry's September 30 email, by stating:

> Anne,
>
> I sent you this email as an fyi just for your education as to what other companies use in their operations. Your response was unwarranted and not well received by me. It's this type of response and reaction that gives people the impression that you are not the right person to lead this operation in the future. If you don't understand what to do with something, then perhaps you should ask first before responding.

33.   Fry had asked the appropriate person at Farmers regarding the issue raised by the email before responding to Palmer. Fry was shocked by the response she had received from Palmer.

34.   In the latter half of 2009, Dereszynski and Palmer asked Fry to look for ways to save money. Accordingly, Fry sent a memo to Farmers employees, including Palmer, asking for new ideas on how to save money for the company. Upon receipt of the memo, Palmer wrote to Fry, stating "you are in orbit". Other Farmers employees saw the email.

35.   Fry understood Palmer's responsive email to be hostile towards Fry.

36.   On September 16, 2009, Fry was at the Marriot Hotel in Pocatello for a meeting with Farmers employees, including Palmer. During their walk to lunch, Palmer indicated to Fry that he need to talk to her in private after the meeting. In their private

meeting, Palmer told Fry that he needed to discuss the future regarding Fry's job. Palmer then showed Fry an email from Dereszynski which stated, "Anne Fry just doesn't get it."

37. During the private meeting, Fry asked Palmer what is was that she didn't get and Palmer informed Fry that she was not the leader of the department and that her work was not considered as appropriate for moving into the future. Palmer also informed Fry that she was to tell her department that it was her choice to step down. Palmer further indicated that Farmers was no longer the company it used to be because upper management wanted to get rid of people ready to retire. Fry questioned Palmer if Deresynski wanted her demoted because of her brain surgery, and Palmer replied, "Yes."

38. On September 21, 2009, Fry and Palmer had a regular weekly conference call. During the conference call, Fry asked Palmer if she was being asked to step down due to her brain surgery and Palmer replied "Yes", due to Fry's memory loss.

39. On October 2, 2009, Palmer called Fry and was very upset about the way Fry was handling compliance issues. Fry felt a moral obligation to handle certain account problems in a manner which was fair to policy holders. Palmer was demeaning and yelled at Fry, stating that she was too honest, too direct, and found too many mistakes. Fry was very upset about the way Palmer was treating her to the extent she felt physically ill and decided to take the remainder of the day as a sick day.

40. On October 6, 2009, Fry went to obtain medical help at Juniper Springs Internal Medicine, PC. According to the doctor's notes, Fry reported a panic attack and a mail exchange with a superior that was very disturbing. She reported that difficulties (severe stress) began when she returned to work on August 25, 2008.

41. According the 10/06/09 doctor's notes, Fry also reported Palmer's statements that Fry was too honest, too direct, and was finding too many mistakes. Finally, the doctor's notes indicate that when Fry asked Palmer if his statements were based on her having had a brain tumor and surgery, Palmer said, "Yes it was."

42. Dr. Babbitt, Fry's treating physician, noted that Fry's recent stressors superimposed on her underlying medical conditions had been slowed if not reversed by the too-soon return to work and mostly by the report of stress and pressure at work. Dr. Babbitt felt that in order for Fry to continue to improve medically, she needed to be out of the stress and that when in a calming environment, it would be easier to evaluate Fry and develop an appropriate treatment plan.

43. Based on her physician's recommendation, Fry went on short-term disability in January, 2010.

44. Also in January, 2010, Fry was referred for therapy at Psychological Assessment Specialists to address stress-related issues surrounding her employment. She received therapy for her stresses and her frustration with managers at Farmers.

45. In March, 2010, Fry went on long term disability.

46. In May, 2010, Fry took disability retirement.

47. While Fry was on leave, but before retirement, Fry used Farmers' open door policy and contacted Human Resources representative Amy Gilliand. Fry reported the instances of mistreatment by Palmer and Dereszynski. Fry heard nothing back from Gilliand so she contacted Gilliand and was informed that Palmer had denied the allegations.

48. Fry was fully capable of performing her essential job functions except for the severe stress and pressure to retire from Farmers employees.

49. After Fry returned to her work, Palmer and Dereszynski repeatedly asked Fry when she was going to retire. When Fry took disability retirement, she was fifty-six years old.

50. Upon information and belief, Farmers promotes an expectation that when a person reaches fifty-five years of age and has completed thirty years of service, the person should retire.

51. Fry felt that she had no other choice than to retire. Fry would not have taken disability retirement if it had not been for the hostile work environment and harassment caused by Palmer and Dereszynski.

52. Upon information and belief, Upon information and belief, Farmers filled the position previously filled by Fry with an employee younger than Fry.

## COUNT ONE
### Age Discrimination in Violation of 29 U.S.C. §623 *et seq.* And Title VII of the Civil Rights of 1964 as Amended

53. Fry re-alleges and incorporates Paragraphs 1 through 52 of her Complaint as if fully set forth herein.

54. The discriminatory behavior and statements of Palmer and Dereszynski, as managers, directors and/or agents of Farmers, are imputed to Farmers.

55. Farmers was aware of Fry's age through the time of her employment.

56. Despite her age, Fry was qualified to perform the essential functions of her job with Farmers with minimal accommodations.

57. Farmers constructively discharged Fry from her employment. The constructive discharge was motivated by Fry's age.

58. Because Fry was fifty-six years old when constructively discharged, she was a member of a protected class.

59. Farmers' discriminatory conduct and/or behavior in the workplace against Fry because of her age was outrageous, unwelcome and offensive to Fry.

60. Farmers' discriminatory conduct and/or behavior in the workplace against Fry because of her age was pervasive and constituted a pattern of discrimination.

61. Farmers' discriminatory conduct and/or behavior in the workplace against Fry because of her age was frequent, outrageous, severe, humiliating and pervasive enough to alter Fry's work environment and performance and thus altered the terms, conditions and privileges of Fry's employment, constituting a hostile and/or abusive working environment.

62. Fry was intimidated by her supervisors due to fear of a demotion and/or loss of her employment because of her age. Fry had reasonable reason to believe that such behavior patterns toward her by her supervisors would continue indefinitely.

63. Farmers had knowledge, actual and/or constructive, that their actions constituted discrimination on the basis of age against Fry.

64. Farmers' discriminatory conduct and/or behavior toward Fry because of her age constituted a wonton, willful, and reckless indifference to Fry's federal right to be free from discrimination on the basis of her age.

65. In discriminating against Fry based on age and disability, Farmers violated Title VII of the 1964 Civil Rights Act as amended and 29 U.S.C. §623 *et seq.* Farmers

failed to prevent and/or otherwise adequately remedy the discrimination perpetrated upon the Plaintiff.

66. As a direct and proximate result of Farmers' discriminatory conduct and/or behavior toward Fry because of her age, Fry has incurred and/or sustained damages, including but not limited to back pay, front pay, and compensatory damages. The amount of such damages shall be proven at trial.

## COUNT TWO
### Disability Discrimination in Violation of Americans With Disabilities Act ("ADA"), 42 U.S.C. §12101, *et seq*. And Title VII of the Civil Rights of 1964 as Amended

67. Fry re-alleges and incorporates Paragraphs 1 through 66 of this Complaint as if fully set forth herein.

68. The discriminatory behavior and statements of Palmer and Dereszynski, as managers, directors and/or agents of Farmers, are imputed to Farmers.

69. Due to her brain tumor and resulting surgery, Fry had physical and mental impairments that substantially limited one or more of her major life activities.

70. Farmers regarded Fry as having physical and mental impairments.

71. Despite her disabilities, Fry was qualified to perform the essential functions of her job with Farmers with minimal accommodations.

72. Farmers constructively discharged Fry from her employment. The constructive discharge was motivated by Fry's disabilities.

73. Because Fry was disabled when constructively discharged, she was a member of a protected class.

74. Farmers' discriminatory conduct and/or behavior in the workplace against Fry because of her disabilities was outrageous, unwelcome and offensive to Fry.

75. Farmers' discriminatory conduct and/or behavior in the workplace against Fry because of her disabilities was pervasive and constituted a pattern of discrimination.

76. Farmers' discriminatory conduct and/or behavior in the workplace against Fry because of her disabilities was frequent, outrageous, severe, humiliating and pervasive enough to alter Fry's work environment and performance and thus altered the terms, conditions and privileges of Fry's employment, constituting a hostile and/or abusive working environment.

77. Fry was intimidated by her supervisors due to fear of a demotion and/or loss of her employment because of her disabilities. Fry had reasonable reason to believe that such behavior patterns toward her by her supervisors would continue indefinitely.

78. Farmers had knowledge, actual and/or constructive, that their actions constituted discrimination on the basis of disability against Fry.

79. Farmers' discriminatory conduct and/or behavior toward Fry because of her age constituted a wonton, willful, and reckless indifference to Fry's federal right to be free from discrimination on the basis of her disabilities.

80. Farmers refused to provide reasonable accommodation to Fry by refusing to minimize Fry's stress and pressure in the work place and by repeatedly belittling and demeaning Fry.

81. In discriminating against Fry based on disability, Farmers violated Title VII of the 1964 Civil Rights Act as amended and Americans With Disabilities Act ("ADA"), 42

U.S.C. §12101, *et seq*. Farmers did not prevent and/or otherwise adequately remedy the discrimination perpetrated upon the Plaintiff.

82. As a direct and proximate result of Farmers' discriminatory conduct and/or behavior toward Fry because of her disabilities, Fry has incurred and/or sustained damages, including but not limited to back pay, front pay, and compensatory damages. The amount of such damages shall be proven at trial.

## COUNT THREE
## Attorney Fees

83. Fry re-alleges and incorporates Paragraphs 1 through 82 of this Complaint as if fully set forth herein.

84. As the result of Farmers' wrongful conduct and/or behavior, Fry has been required to retain the services of an attorney to represent her in the above-captioned cause, and Plaintiff is entitled to an award of reasonable attorney fees and costs incurred herein pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. Section 2000e - 5 (k), 29 U.S.C. §623, *et seq*, 42 U.S.C. §12101, *et seq*. and all other applicable federal law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Anne Fry prays for judgment against Defendants Farmers Insurance, Farmers Insurance Exchange, Farmers Group, Inc., Farmers Insurance Company of Idaho, and Farmers Insurance Group of Companies District Office as follows:

1. For damages incurred as a result of Defendants' acts in violation of the age discrimination statutes cited above including back pay, front pay and compensatory damages allowable by law, in an amount to be proven at trial.

2.   For damages incurred as a result of Defendants' acts in violation of the disability discrimination statutes cited above including back pay, front pay and compensatory damages in an amount to be proven at trial.

3.   For an award of Plaintiff's attorney fees incurred in the prosecution of this action, pursuant to 42 U.S.C. §2000e - 5 (k), 42 U.S.C. §12205, all other applicable federal statutes, and/or the Federal Rules of Civil Procedure, including F.R.C.P 54.

4.   For costs of suit incurred herein; and

5.   For such other and further relief as the Court deems just and equitable under the circumstances.

**PURSUANT TO RULE 38 OF THE FEDERAL RULES OF CIVIL PROCEDURE, PLAINTIFF DEMANDS TRIAL BY JURY.**

DATED this ____ day of December, 2012.

/s/ Nick L. Nielson
NICK L. NIELSON, Attorney for Plaintiff Anne Fry

## VERIFICATION

STATE OF IDAHO          )
                        ) ss.
COUNTY OF BANNOCK       )

ANNE FRY, being first duly sworn, deposes and says:

That she is the Plaintiff in the above-entitled action; That she has read the foregoing Complaint and Demand for Jury Trial, knows its contents, and that the facts therein alleged are true to the best of her knowledge.

/s/ Anne Fry
ANNE FRY

**SUBSCRIBED AND SWORN TO** before me this 28th day of December, 2012.

/s/ Tonia R. Allred
NOTARY PUBLIC FOR IDAHO
(SEAL)          Residing at: Pocatello, Bannock County
My Commission Expires: 02/07/2015